UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
CAMILLE GROSDIDIER *et al.*,       )
                                   )
            Plaintiffs,            )
    v.                             )   Civil Action No. 07-1551 (ESH)
                                   )
JAMES K. GLASSMAN, Chairman of the )
  Broadcasting Board of Governors, )
                                   )
            Defendant.             )
_____)

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

For the reasons set forth in Defendant's Memorandum in Support of Motion to Dismiss for Lack of Jurisdiction, plaintiffs' motion to supplement the administrative record should be denied as moot based on the lack of jurisdiction. Plaintiffs have not pleaded any proper claim under the Administrative Procedure Act. Consequently, there is no need for the Court to examine the sufficiency of existing administrative record. For the reasons explained in the same memorandum, this action should not be litigated as a class action.

In the alternative, to the extent the Court possesses jurisdiction, judicial review in this case is limited to the Broadcasting Board of Governors ("BBG" or "Agency")'s interpretation of its statutory authority to hire non-citizens found at 22 U.S.C. § 1474. The existing record contains ample materials for the Court to apprehend what the BBG's interpretation of its authority is and what it is based upon. Because reviewing individual past applications of that policy in the selection of various employees for promotion during the six years preceding this lawsuit it outside the scope of the APA and its remedial purpose, plaintiffs' motion should be denied.

I.      Introduction

Plaintiffs bring this action exclusively under the Administrative Procedure Act, 5 U.S.C. § 706. But the nature of the remedies they are seeking and material they seek to have the Court compel defendant to add to the record are inconsistent with the analytical framework and statutory scheme under which they are proceeding. The record tendered by the Broadcasting Board of Governors ("BBG") to date [Docket Entry No. 8] is sufficient to resolve the only potentially well-pleaded claim in this case: whether BBG's interpretation of its statutory hiring authority for non-citizens is arbitrary, capricious, or contrary to law. For the reasons described below, because the APA makes primarily prospective and declaratory relief available to correct agency action, there is no need to expand the record to include individual vacancy announcement files as if the Court were going to second-guess individual employment decisions.

The individual non-promotion decisions of the plaintiffs are not irrelevant. To meet the statutory requirements for standing under the APA, a plaintiff "must establish (1) that there has been a final agency action adversely affecting [it], and (2) that, as a result, it suffers legal wrong or that its injury falls within the 'zone of interests' of the statutory provision the plaintiff claims was violated." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 882-83 (1990). The final agency action requirement of the APA precludes federal court jurisdiction over suits that seek broad programmatic relief. "While a single step or measure is reviewable, an on-going program or policy is not, in itself, a 'final agency action' under the APA." Cobell v. Norton, 240 F.3d 1081, 1095 (D.C. Cir. 2000) (citing Lujan, 497 U.S. at 890). A plaintiff cannot seek wholesale improvement of a program or policy by court decree. Lujan, 497 U.S. at 891. "Under the terms of the APA," a plaintiff "must direct its attack against some particular 'agency action' that causes

it harm," and "cannot demand a general judicial review of [an agency's] day-to-day operations." Id. at 899.  The challenged action must mark the "consummation of the agency decision-making process."  Indep. Petroleum Ass'n of America v. Babbitt, 235 F.3d 588, 595 (D.C. Cir. 2001) (holding that a plaintiff's complaint challenging a policy letter written by the Associate Director of the Minerals Management Service did not challenge agency action under the APA, but was the type of "generic challenge" the Lujan Court refused to hear).

"Except where Congress explicitly provides for [judicial] correction . . . at a higher level of generality, [the court] intervene[s] in the administration of the laws only when, and to the extent that, a specific 'final agency action' has an actual or immediate threatened effect." Communities for a Great Northwest, Ltd. v. Clinton, 112 F. Supp.2d 29, 38 (D.D.C. 2000). Therefore, not only is a broad goal not "final" agency action until some specific action has been taken in pursuit of that goal, but the goal is only reviewable "to the extent" of the specific action that has been taken.  The Lujan court found that judicial review may not be used to invoke broad, systemic changes, the likes of which are typically reserved for Congress.  The Lujan Court stated as much when it held:

> But it is at least entirely certain that the flaws in the entire 'program' – consisting primarily of the many individual actions referenced in the complaint, and presumably actions yet to be taken as well – cannot be laid before the courts for wholesale correction under the APA, simply because one of them that is ripe for review adversely affects one of the respondent's members.

Id. at 892-93.  Consequently, the plaintiffs in this case must limit their challenge of agency action to challenges of "specific 'final agency action' [that] has an actual or immediate[] threatened effect."  Id. at 894.

As the Court acknowledged in Lujan:

> The case-by-case approach that this requires is understandably frustrating to an organization such as respondent [National Wildlife Federation], which has as its objective across-the-board protection of our Nation's wildlife and the streams and forests that support it. But this is the traditional, and remains the normal, mode of operation of the courts.

Lujan, 497 U.S. at 894; see also Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 734-35 (1998). The Court observed that the APA does not permit a party to "seek wholesale improvement of [an agency's] program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made." Lujan, 497 U.S. at 891.

The Administrative Record Is Sufficient

It is settled that the administrative record in an APA case "includes all materials compiled by the agency . . . that were before the agency at the time the decision was made." James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (citations and internal punctuation omitted). See also Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 419-20 (1971). While an agency may supplement an administrative record in certain limited circumstances, Ludwig, 82 F.3d at 1095, that is not the situation here. At this point, the administrative record contains the BBG's interpretation of its authority under 22 U.S.C. § 1474 and materials relating to its development and implementation.

Evaluating the administrative record prior to the filing of dispositive motions on the merits renders plaintiffs' motion a tad abstract. Significantly, the APA itself makes clear that it is not necessarily required to file a complete administrative record, a provision that makes perfect sense in cases where the record is voluminous or otherwise contains information not relevant to the dispute before the Court. The text of the APA itself provides: "In making the foregoing

determinations, the court shall review the whole record ***or those parts of it cited by a party***, and due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706 (emphasis added). Not only does the statute expressly authorize judicial review on the parts of the record cited by the parties, but the statute separately makes plain that "the rule of prejudicial error" is the proper standard of review, which is plainly inconsistent with any sort of *per se* rule that an exhaustive administrative record must be filed whenever a plaintiff alleges a cause of action under the APA. See, e.g., Nevada v. Dep't of Energy, 457 F.3d 78, 90 (D.C. Cir. 2006) (applying prejudicial error standard). This is fully consistent with the Court's recently issued Local Civil Rule 7(n), which provides for filing of "an appendix containing copies of those ***portions*** of the administrative record that are *cited or otherwise relied upon in any* memorandum in support of or in opposition to any *dispositive motion*." See www.dcd.uscourts.gov/LocalRuleChanges041007.pdf (emphasis added).

Judicial review of informal agency actions such as the promotion decisions at issue here is "narrow" and the Court is not entitled to substitute its judgment for that of the agency. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971); Vermont Yankee Nuclear Power Corp. v. NRDC, 435 U.S. 519, 558 (1978); Doraiswamy v. Secretary of Labor, 555 F.2d 832 (D.C. Cir. 1976). "Under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards." PPG Indus. v. United States, 52 F.3d 363, 365 (D.C. Cir. 1995).[1]

---

[1] See also Florida Power & Light, 470 U.S. at 744 (proper course is to remand to agency for additional investigation or explanation); Vermont Yankee Nuclear Power Corp. v. NRDC, 435 U.S. 519, 549 (1978); Camp v. Pitts, 411 U.S. 138, 143 (1973); SEC v. Chenery Corp., 318

Heckler v. Chaney, 470 U.S. 821 (1985), among many other cases, establishes the general proposition that courts are not to substitute their administrative judgments for those of the agency.  Applying that principle here, if the Court determines that BBG has been incorrectly applying the statutory authority in 22 U.S.C. § 1474, then the proper course would be remand to the agency.  For instances where BBG had applied the policy, or any time where it failed to justify sufficiently its decision to hire a non-citizen, there is no way of knowing what the agency's decision would have been had it applied a different standard in its lawful administrative process, and the Court should refrain from usurping the Agency's role in crafting a solution to any past instances where non-citizens were hired and a qualified U.S. citizen was also available for selection.  Cf. Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999) ("Title VII, it bears repeating, does not authorize a federal court to become 'a super-personnel department that reexamines an entity's business decisions.'") (quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986)).[2]

---

U.S. 80, 94-95 (1943).

[2] In the somewhat analogous context of equitable relief in cases where intentional discrimination is found, courts have found reinstatement to be inappropriate for any of several reasons which might apply here.  For example, when the position no longer exists, reinstatement is sometimes denied.  E.g., Ray v. Iuka Special Mun. Separate Sch. Dist., 51 F.3d 1246, 1254 (5th Cir.1995) (court possesses the requisite discretion to refuse reinstatement if an ADA claimant's former position no longer exists); Cassino v. Reichhold Chemicals, Inc., 817 F.2d 1338, 1346 (9th Cir.1987), cert. denied, 484 U.S. 1047 (1988) (noting that reinstatement is not feasible where there is no position available); Eldred v. Consolidated Freightways Corp. of Delaware, 907 F.Supp. 26, 28 (D.Mass. 1995).  Courts also weigh the impact on the workforce attendant to the displacement of employees occupying positions among the factors in crafting remedies for discrimination.  As the D.C. Circuit has opined, "it may well be appropriate, perhaps even required, that a district court consider the impact of reinstatement on [the] displaced employee," particularly where changes will negatively impact on innocent third parties.  See Webb v. District of Columbia, 146 F.3d 964, 977 (D.C. Cir. 1998), citing, Lander v. Lujan, 888 F.2d 153, 157 (D.C. Cir. 1989); see also Slayton v. Ohion Department of Youth Servs., 206

Larsen v. U.S. Navy, 346 F. Supp. 2d 122 (D.D.C. 2004), is instructive on these remedy issues. In Larsen, a group of rejected applicants for positions as naval chaplains challenged a policy dividing the available positions into thirds which the plaintiffs alleged was arbitrary and minimized career opportunities for non-liturgical clergy. Id. at 125. Addressing the nature of the claim presented, the Court interpreted the complaint "to request an opportunity to be considered for commission in the Corps [in the future] without an intentionally illegal set of hiring criteria." Id. at 128. The Court also rejected claims for constructive service and retirement credit which is tantamount to the back-pay plaintiffs purport to seek in this case. Id. at 129-30. So although the Court found that it had jurisdiction over at least some claims, based on its recognition that rejected applicants had standing, it did not contemplate deciding whether particular chaplains should have gotten jobs if ultimately determined that the challenged policy was flawed.

Properly viewed then, the issue presented in this case is not, as plaintiffs claim in their motion, the correctness of " the decisions wherein each prospective class member was passed over for selection or promotion in favor of a non-U.S. citizen." Pls.' Mem. In Support of Mot. To Supplement Admin Record, at 3. Applying the logic of Larsen, the Court will never be called

---

F.3d 669, 680 (6th Cir. 2000); Hudson v. Reno, 130 F.3d 1193, 1202 (6th Cir. 1997), cert. denied, 525 U.S. 822 (1998); Duke v. Uniroyal Inc., 928 F.2d 1413, 1423 (4th Cir. 1991)(recognizing that reinstatement has not been ordered when a productive and amicable working relationship is not practicable). Here, unlike in discrimination cases, because the nature of plaintiffs' claims is not that the agency has *intentionally* violated its statutory authority but has merely *misunderstood* it, it would be particularly appropriate for the court to allow the agency to determine in the first instance how to address any problem. See Milk Train, Inc. v. Veneman, 310 F.3d 747, 755-56 (D.C. Cir. 2002) (in an APA case, whether to remand or to vacate "depends on [1] the seriousness of the . . . deficiencies (and thus the extent of doubt whether the agency chose correctly) and [2] the disruptive consequences of an interim change that may itself be changed.") (internal citations and quotations omitted).

upon to review all of the materials associated with the individual vacancy announcements.

Indeed, as the D.C. Circuit has emphasized:

> As we have often observed, "[w]hen a final agency action is challenged under the APA in district court, if the relevant substantive statute does not provide for direct review in the court of appeals, the district court does not perform its normal role" but instead "sits as an appellate tribunal." PPG Indus., Inc. v. United States, 52 F.3d 363, 365 (D.C. Cir. 1995) (quoting Marshall County Health Care Auth. v. Shalala, 988 F.2d 1221, 1225 (D.C. Cir. 1993)); accord James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1096 (D.C. Cir. 1996) ("Generally speaking, district courts reviewing agency action under the APA's arbitrary and capricious standard do not resolve factual issues, but operate instead as appellate courts resolving legal questions."), cert. denied, 519 U.S. 1077, 117 S.Ct. 737, 136 L.Ed.2d 676 (1997). Whether it is a court of appeals or a district court, "[u]nder settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards." PPG Indus., 52 F.3d at 365; see also South Prairie Constr. Co. v. Local No. 627, Int'l Union of Operating Eng'rs, 425 U.S. 800, 806, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976); SEC v. Chenery Corp., 318 U.S. 80, 94-95, 63 S.Ct. 454, 87 L.Ed. 626 (1943). Once, therefore, the district court held that the Secretary had misinterpreted § 1395ww(d)(5)(A)(iv), it should have remanded to the Secretary for further proceedings consistent with its conception of the statute. Not only was it unnecessary for the court to retain jurisdiction to devise a specific remedy for the Secretary to follow, but it was error to do so. See Ommaya v. National Insts. of Health, 726 F.2d 827, 830 (D.C. Cir. 1984) ("If MSPB relied on incorrect legal grounds, it would be error for this court to enforce without first remanding for agency examination of the evidence and proper fact-finding.") (quoting White v. United States Dep't of the Army, 720 F.2d 209, 210 (D.C. Cir. 1983)).

County of Los Angeles v. Shalala, 192 F.3d 1005, 1011-12 (D.C. Cir. 1999), cert. denied, 530 U.S. 1204 (2000).

In Lujan v. National Wildlife Federation, 497 U.S. 871(1990), Justice Blackmun, writing in dissent but apparently expressing the view of all nine Justices on this question, noted:

> The Administrative Procedure Act permits suit to be brought by any person "adversely affected or aggrieved by agency action." In some cases the "agency action" will consist of a rule of broad applicability; and if the plaintiff prevails, the result is that the rule is invalidated, not simply that the court forbids its

> application to a particular individual. Under these circumstances a single plaintiff, so long as he is injured by the rule, may obtain "programmatic" relief that affects the rights of parties not before the court. On the other hand, if a generally lawful policy is applied in an illegal manner on a particular occasion, one who is injured is not thereby entitled to challenge other applications of the rule.

Id. at 913 (Blackmun, J., dissenting) (citation omitted). See also id. at 890 n.2 (majority opinion) (noting that under APA, successful challenge by aggrieved individual can affect entire agency program). The "programmatic relief" is a change in the agency's policy going forward.

Consequently, if any judicial review is ultimately undertaken in this case after the Court resolves defendant's motion to dismiss for lack of subject matter jurisdiction, the Court's role should be limited to whether BBG's interpretation of 22 U.S.C. § 1474 is arbitrary, capricious, or contrary to law. The relevance of plaintiffs' non-promotions is that they might provide standing for plaintiffs' challenge to BBG's interpretation of its statutory hiring authority conferred by the denial of promotions each alleges in the complaint. The scope of judicial review, however, is "narrow and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Assoc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (internal citation and quotation omitted).[3] Were the Court to determine that BBG's interpretation of the statute is flawed, the

---

[3] A facial challenge to an Agency's rule or policy may not be based on the assumption that the agency will exercise its discretion unlawfully or will misapply the regulation. See, e.g., Action Alliance of Senior Citizens of Greater Philadelphia v. Heckler, 789 F.2d 931, 941 (D.C. Cir. 1986); Union of Concerned Scientists v. U.S. Nuclear Regulatory Comm'n, 880 F.2d 552, 558-59 (D.C. Cir. 1989). In reviewing a facial challenge, the agency would be entitled to some level of deference. Barnhardt v. Walton, 535 U.S. 212, 221 (2002) ("[T]he fact that the Agency previously reached its interpretation through means less formal that 'notice and comment' rulemaking, see 5 U.S.C. § 553, does not automatically deprive that interpretation of the judicial deference otherwise due."); Edelman v. Lynchburg College, 535 U.S. 106, 114 (2002) (same). Even if BBG's interpretation of 22 U.S.C. § 1474 does not qualify for the heightened deference afforded under Chevron, it is surely "entitled to respect." Christensen v. Harris County, 529 U.S. 576, 587 (2000), quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944). In addition, BBG

appropriate remedy would be to remand to the Agency for development of a new policy in light of the Court's ruling. The APA does not contemplate traveling back in time to examine whether the Agency's past decisions applying its current policy should be changed. Larsen v. U.S. Navy, 346 F. Supp. 2d 122 (D.D.C. 2004). Indeed, the Court should decline plaintiffs' invitation to attempt to determine whether particular individuals were so much better qualified for foreign-language positions for the reasons discussed above.

    The cases cited by plaintiffs are unpersuasive because they do not involve challenges at all similar to the claims in this case and support only the most general propositions concerning the adequacy of administrative records. See Pls.' Mem. at 5. For example, in Environmental Defense Fund, Inc. v. Costle, 657 F.2d 275 (D.C. Cir. 1981), the D.C. Circuit affirmed actions by various federal agencies with respect to a challenge regarding water quality standards. In Commercial Drapery Contractors, Inc. v. United States, 133 F.3d 1 (D.C. Cir. 1998), the Court denied a request to look outside the administrative record. Moreover, the portion plaintiffs cite from Commercial Drapery merely suggests that an administrative record might need to be supplemented where there has been a showing of bad faith or the record fails to explain the administrative action. Because plaintiffs do not even suggest any bad faith in this case and the existing administrative record amply explains the BBG's interpretation of its statutory authority and its basis, these unusual circumstances simply do not exist.[4]

---

does not concede here that its policy is reviewable under the APA.

    [4] Dopico v. Goldschmidt, 687 F.2d 644 (2d Cir. 1982), is similarly unenlightening because the district court in that case had specifically found that the absence of "such fundamental documents" that their "conspicuous[] absen[ce]" strongly suggested that the agency had more information before it at the time of its decision than was presented in the administrative record. In this regard, because defendant urges the Court to follow the approach in Larsen,

**Conclusion**

For all these reasons, the Court should deny plaintiffs' motion to supplement the administrative record. If, however, the Court determines that the administrative record should be supplemented, the additional materials should be limited to the two decisional memos explaining why non-citizens were hired instead of the three named plaintiffs in this action.

Dated: March 12, 2008.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/_____
JANE M. LYONS, D.C. Bar # 451737
Assistant United States Attorney
555 4th Street, N.W. - Room E4822
Washington, D.C. 20530
(202) 514-7161

---

consistent with the remedial purposes of the APA, and refrain from examining the relative qualifications of plaintiffs and persons selected for particular positions, the documents plaintiffs seek to add to the record are not "fundamental" or even relevant. Finally, in Indiana Manufacturing Housing Ass'n v. Pierce, No. 586-698, 1987 WL 14805 (N.D. Ind. 1987), the Court addressed a request for a preliminary injunction, and the decision does not suggest that any administrative record had yet been produced. The district court's prediction in Indiana Manufacturing that resolving the issue on the "bare record" at such a preliminary stage of the case was difficult, and ultimately might require production of an administrative record is hardly noteworthy here, particularly because BBG has already produced the administrative record.