UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAMILLE GROSDIDIER *et al.*,

Plaintiffs,

v.

JAMES K. GLASSMAN, Chairman of the Broadcasting Board of Governors,

Defendant.

Civil Action No. 07-1551 (ESH)

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF JURISDICTION OR, IN THE ALTERNATIVE, TO STRIKE THE CLASS CLAIMS**

The crux of this case is a claim that plaintiffs were denied promotions because the Broadcasting Board of Governors ("BBG") allegedly mis-applied a statute, 22 U.S.C. § 1474, by hiring non-citizens for positions instead of U.S. citizen-applicants who are suitably qualified for the positions. See First Am. Compl. ¶¶ 13-16. The statute provides authorization for BBG to hire non-citizens for certain positions (requiring foreign language skills) only when there are no suitably qualified U.S. citizens who apply. In other words, although Congress provided authority for BBG to hire non-citizens for certain positions, it simultaneously granted "suitably qualified" U.S. citizens a preference over, for example, non-citizens, such as legal permanent residents. Because 22 U.S.C. § 1474(1) creates a preference, plaintiffs' allegations that BBG allegedly violated it when it hired non-citizens for positions for which they applied, plaintiffs are complaining about a "prohibited personnel practice" within the meaning of 5 U.S.C. §

2302(b)(6), which is within the comprehensive remedial scheme of the Civil Service Reform Act ("CSRA"), and this Court lacks jurisdiction over plaintiffs' claims.

In response, plaintiffs deny that their allegations constitute a prohibited personnel practice mainly because, in their view, "22 U.S.C. § 1474(1) was not designed to effectuate or uphold the merit promotion principles embodied in and imposed by the CSRA and enforceable before the MSPB." Pls.' Opp. at 8. That is the wrong question, and that 22 U.S.C. § 1474(1) nowhere mentions or incorporates the concept of a merit system principle is irrelevant. Congress drafted the merit system principles purposefully to encompass broad concepts without the need for specific cross-references, as plaintiffs envision, and to cover an expansive range of employment practices.

Significantly, the Court is not bound by plaintiffs' (of defendant's) characterization, and the Court must decide whether their claims fit within the statutory scheme of the CSRA. See Whitman v. Department of Transportation, 547 U.S. 512, 513-14 (2006) (reminding courts that parties' characterization of whether actions constitute prohibited personnel practices "ought not to be accepted out of hand" because the issue is jurisdictional); see Trudeau v. Federal Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (court need not presume the truth of legal conclusions cloaked as factual statements). Although this particular issue has not been addressed previously by this Court or in any other reported decisions, the analysis is straightforward.[1]

---

[1] Recently, the Honorable John D. Bates dismissed a similar claim under the APA in Nyunt v. Glassman, Civil Action No. 06-1165 (JDB), for lack of standing. See March 21, 2008 Mem. Op. at 23-26 [Docket Entry No. 33]. Mr. Nyunt sought a declaratory judgment finding that the same defendant's interpretation of 22 U.S.C. § 1474 is contrary to the statute and an injunction prohibiting the BBG from relying on that erroneous interpretation in the future. Id. at 23-24. The parties did not raise any argument based on the exclusivity of the CSRA as a jurisdictional bar, but the Court found that it lacked jurisdiction because Mr. Nyunt was unable to

The CSRA specifically requires that employees refrain from "grant[ing] any preference or advantage not authorized by law. . . to any employee or applicant for employment . . . for the purpose of improving or injuring the prospects of any particular person for employment." 5 U.S.C. § 2302(b)(6). In their opposition, plaintiffs do not deny that the selection decisions they seek to challenge are as "personnel actions" within the meaning of the CSRA. See 5 U.S.C. § 2302(a)(2)(A)(ii). Instead, plaintiffs argue that Defendant's misapplication or misinterpretation of the statutory authority to hire non-citizens found in 22 U.S.C. § 1474(1) does not have the effect of giving a preference or advantage not authorized by law. See Pls.' Opp at 5. Assuming the truth of plaintiffs' allegations and logical inferences drawn from them, however, the non-citizens selected instead of plaintiffs were given a preference not authorized by law and contrary to the preference embodied in 22 U.S.C. § 1474(1). See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

By limiting the authority of BBG to hire non-U.S. citizens, the statute plainly affords a preference for hiring U.S. citizens under certain circumstances (the exact nature of which the parties may dispute). But without question, the alleged systemic or policy-based denial of the

---

establish standing. The Court reasoned that the alleged injury of not obtaining a position given to a non-citizen in the past is insufficient to get over the requirement of causation where three U.S. citizens were found qualified for the position. Id. at 24. Mr. Nyunt essentially was unable to show that his non-selection for the position was caused by the application of the BBG's understanding of its authority to hire non-citizens. The Court went on to find that Mr. Nyunt's requested remedy would not redress his injury because he failed to seek the position awarded to the non-citizen. Id. at 25-26. In this case, the causation problem is present at least as to plaintiffs Bustamonte and Martinez because they were competing for the same position, so as to each of them, BBG's application of 22 U.S.C. § 1474(1) was not the cause of their non-selections. See First Am. Compl. ¶¶ 21, 24. The redressability problem identified in Nyunt appears to be absent here because plaintiffs plainly seek instatement into the positions through displacement of the non-citizens selected by the BBG with payment of retroactive benefits. See First Am. Compl. ¶ 46(c).

preference for U.S. citizens certainly has the effect of granting a preference not authorized by law to non-citizen applicants. In short, the denial of preference to one group is tantamount to granting a preference to another. Although plaintiffs strain vainly to separate these two sides of the same coin, the logic is inescapable: 22 U.S.C. § 1474(1) creates a hiring preference for a "suitably qualified" U.S. citizen instead of a non-citizen. Failure to give a U.S. citizen a position where plaintiffs allege that the statute requires it, effectively grants a preference to the selected non-citizen not authorized by law.

Consequently, plaintiffs' claim that BBG violates 22 U.S.C. § 1474(1) constitutes an alleged prohibited personnel practice because it accuses BBG of violating the merit system principle set out at 5 U.S.C. § 2302(b)(6). The plain language of the CSRA requires plaintiffs to present their claims first to the Office of Special Counsel and, then, if they remain dissatisfied, to the Merit Systems Protection Board prior to any judicial review. Federal law requires the MSPB to respond to any request for corrective action from the Office of Special Counsel, and the MSPB may order the Agency to implement any corrective action the Board deems appropriate. The process for addressing plaintiffs' claims through the required administrative mechanisms is outlined in the CSRA:

1. 5 U.S.C. § 1214(a)(1)(A) provides in relevant part: "The Special Counsel shall receive any allegation of a prohibited personnel practice and shall investigate the allegation[;]"

2. 5 U.S.C. § 1214 (a)(3) states: "Except [in circumstances not applicable here] . . . any such employee . . . shall seek corrective action from the Special Counsel before seeking corrective action from the Board[;]"

3. 5 U.S.C. § 1214(b)(2)(C) requires: "If, after a reasonable period of time, the agency does act to correct the prohibited personnel practice, the Special Counsel may petition the Board for corrective action[;]"

4. Finally, 5 U.S.C. § 1214(b)(4)(A) states: "The Board shall order such corrective action as the Board considers appropriate if the Board determines that a prohibited personnel practice . . . has occurred, exists, or is to be taken."

All references to the "Board" are to the Merit Systems Protection Board, and the "corrective action" is the "action" referred to in 5 C.F.R. § 2301.2 which controls the MSPB's original jurisdiction.

Judicial review of alleged prohibited personnel practices is limited by statute to actions of the MSPB, and its preclusive effect on other statutes is well-established. United States v. Fausto, 484 U.S. 389, 448 (1988) (holding that the right to judicial review of determinations of the MSPB is limited to the terms of the CSRA); Spagnola v. Mathis, 859 F.2d 223, 228-29 (D.C. Cir. 1988) (CSRA precludes *Bivens* action premised on conduct amounting to prohibited personnel practice); Orsay v. United States Dep't of Justice, 289 F.3d 1125, 1128 (9th Cir. 2002) ("If the conduct that Appellants challenge in this action falls within the scope of the CSRA's 'prohibited personnel practices,' then the CSRA's administrative procedures are Appellants' only remedy, and the federal courts cannot resolve Appellants' claims."); Wills v. Office of Personnel Management, 16 F.3d 414, 1994 WL 22349 at *2 (4th Cir.1994) (table) ("Both the United States Supreme Court and this Court have held that the CSRA is the vehicle through which federal employees may challenge adverse employment actions.") (citing Lindhal v. Office of Personnel Management, 470 U.S. 768, 784-85 (1985)); McAuliffe v. Rice, 966 F.2d 979, 981 (5th

Cir.1992) (CSRA furnishes the exclusive set of remedies available to federal employees of all types); Aaron v. United States, 113 F.3d 1245 (10th Cir. 1997) (table) (FTCA and APA claims relating to employment are preempted by CSRA).

Review of administrative personnel actions pursuant to the APA is improper where the action is covered by the CSRA because the Court lacks jurisdiction. Carducci v. Regan, 714 F.2d 171, 174 (D.C. Cir. 1983); Harrison v. Bowen, 815 F.2d 1505, 1513 (D.C. Cir. 1987) (noting that the CSRA "had the effect of depriving employees of a right of judicial review under the APA that they probably had prior to the enactment of the CSRA."); see also Veit v. Heckler, 746 F.2d 508, 511 (9th Cir. 1984) (APA review of CSRA grievances was improper because "the comprehensive nature of the procedures and remedies provided by the CSRA indicates a clear congressional intent to permit federal court review as provided in the CSRA or not at all."). In Croddy v. Federal Bureau of Investigation, No. 00-651 (EGS), 2006 WL 2844261 (D.D.C. Sept. 29, 2006), the Court found that plaintiffs' allegations that the use of allegedly unreliable polygraph examinations in hiring by the FBI and the Secret Service were covered by the CSRA because it requires "fair and equitable treatment." Slip. Op. at *5, citing 5 U.S.C. § 2301(b)(2). As the Court should here, the Court found that plaintiffs' APA claims that the use of polygraphs was arbitrary and capricious and violated the agencies' own regulations were precluded by the CSRA. See id.

Plaintiffs fail to address meaningfully any of the authorities precluding direct appeal to the federal courts. Plaintiffs' reliance on Worthington, 168 F.3d 24 (Fed. Cir. 1999), is misplaced. See Pls.' Opp. at 4, 9. At most, Worthington only gets them back to the Court of Federal Claims for a claim under the Back Pay Act that the Court of Federal Claims has already

rejected. See Grosdidier v. United States, 77 Ct. Cl. 106 (2007). Worthington does not recognize a valid action under the APA in this Court; Worthington proceeded in the Court of Federal Claims under the Tucker Act.[2] Even if correct, plaintiffs' notion that Worthington recognizes jurisdiction for personnel claims falling outside the coverage of the CSRA, this case should still be dismissed because the CSRA clearly applies by virtue of 5 U.S.C. § 2302(b)(6). In any event, Worthington is not binding on this Court.[3]

Plaintiffs further contend erroneously that the MSPB lacks jurisdiction because it is controlled by regulation. See Pls.' Opp. at 6-7. Plaintiffs are incorrect. The MSPB's jurisdiction is controlled by statute, and, in any event, 5 C.F.R. § 1201.2 includes "[a]ctions brought by the Special Counsel under 5 U.S.C. § 1214. . ." So under the statutory framework outlined above, the MSPB would plainly have jurisdiction if plaintiffs follow the appropriate administrative path to judicial review.

Plaintiffs also argue that some sort of intent or individual requirement need be shown for a prohibited personnel practice to be alleged. See Pls.' Opp. at 5-6.[4] Plaintiffs cite no authority

---

[2] To the extent it became applicable, which it should not, it would appear that plaintiffs seek more than $10,000 on behalf of a putative class they allege in the First Amended Complaint is too numerous for joinder to be practical such that jurisdiction would only lie in the Court of Federal Claims. First Am. Compl. ¶ 29; see 28 U.S.C. § 1491.

[3] "The federal courts spread across the country owe respect to each other's efforts and should strive to avoid conflicts, but each has an obligation to engage independently in reasoned analysis. Binding precedent for all is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit." In Re Korean Airlines Disaster of September 1, 1983, 829 F.2d 1171, 1176 (D.C. Cir. 1987).

[4] Plaintiffs' argument in this respect is in considerable tension with their position that the administrative record should be supplemented to include the vacancy announcement files for promotion decisions made by BBG during the six years preceding their lawsuit. See First Am. Compl. ¶¶ 15-16 (alleging that BBG's practice or rules "eschew" and "avoid" the statutory

for this proposition, and there is no basis in the CSRA for imposing any additional elements. Moreover, following Fausto, federal courts have considered the exclusivity of CSRA remedies to preclude similar types of claims raised under other statutes. See, e.g., Ryon v. O'Neill, 894 F.2d 199, 200 (6th Cir.1990) (CSRA precludes direct appeal by to federal courts under APA for employee alleging discrimination based on his marital status); Stephens v. Department of Health & Human Servs., 901 F.2d 1571, 1576 (11th Cir.) (CSRA provides exclusive remedy for preference-eligible veteran, as well as nonpreference-eligible federal employees who challenge a promotion decision), cert. denied,498 U.S. 998 (1990).[5]

On the other hand, Graham v. Ashcroft, 358 F.3d 931 (D.C. Cir. 2004), also cited by plaintiffs, solidly supports dismissal of this case. See Pls.' Opp. at 3. In Graham, the D.C. Circuit affirmed the dismissal of an action challenging the imposition of a letter of censure because the CSRA precluded judicial review. Graham, 358 F.3d at 933, 935-36.

Because plaintiffs fail to allege that they have ever presented their claims of BBG's erroneous application of 22 U.S.C. § 1474(1) to the Office of Special Counsel and the MSPB,

---

requirement). If plaintiffs are indeed challenging the agency's interpretation of the statute in its policies, as opposed to in individual decisions where intent would arguably be relevant, then there would be no need for including all of the vacancy announcement files for all hires in the last six years to be part of the administrative record. Only at the point where the Court has determined that it has jurisdiction over the claim and that the BBG's interpretation of its statutory authority is contrary to law might these vacancy announcement files be implicated for purposes of crafting a remedy, but plaintiffs' opposition to defendant's motion confirms that the Court need not examine them in reviewing the merits of an APA claim if it reaches it.

[5] Plaintiff Grosdidier is correct that the Court of Federal Claims dismissed the case she brought presenting a claim highly similar to the one she brings in this case based on the absence of a money-mandating statute to invoke the Tucker Act. Pls.' Opp. at 3 n.2. Although defendant argued that the MSPB had exclusive jurisdiction over the type of claim, the Court of Federal Claims declined to reach the issue. Grosdidier v. United States, 77 Fed. Cl. 106, 107 n.5 (Fed. Cl. 2007).

this case should be dismissed for lack of jurisdiction because plaintiffs' claims fit squarely within the comprehensive statutory scheme of the Civil Service Reform Act, and 5 U.S.C. § 1214(c) confines judicial review to final decisions by the MSPB, and no such decision currently exists.

      B.      Even If Jurisdiction Exists, the Court Can Grant Defendant's Motion to Strike As Unopposed Or, In the Alternative, May Defer Consideration of Defendant's Arguments on Class Certification

After defendant filed his motion to dismiss, the Court granted plaintiffs' consent motion to extend the time for filing their motion for class certification beyond the time permitted in Local Civil Rule 23.1. Although defendant withdrew his argument based on the violation of Local Rule 23.1, defendant's opening memorandum includes arguments that were not withdrawn concerning the inappropriateness of class claims under the APA and plaintiffs' failure to satisfy at least some of the requirements of proceeding as a class action under Rule 23 of the Federal Rules of Civil Procedure. See Notice Regarding Defendant's Motion to Strike Class Claims (where defendant withdrew only those arguments found at section II.A. in his brief) [Docket Entry No. 15]. Plaintiffs failure to address any of the latter arguments, found in section in II. B of defendant's opening brief, constitutes a wholesale concession, and the Court should grant defendant's motion to strike all class claims as unopposed because it is well settled in this Circuit that when a plaintiff files an opposition addressing only certain arguments raised by the defendant, "a court may treat those arguments that the plaintiff failed to address as conceded." Hopkins v. Women's Div., General Bd. of Global Ministries, 238 F. Supp.2d 174, 178 (D.D.C. 2002) (citing FDIC v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997); see also United States v. Real Property, Parcel No.03179-005R, Civ. A. No. 01-0706, 2003 WL 224053382 at * 12 (D.D.C. Oct. 21, 2003); Bancoult v. McNamara, 227 F. Supp.2d 144, 149 (D.D.C. 2002); see

also Local Civil Rule 7(b). In the alternative, if the Court does not dismiss this action for lack of jurisdiction, the Court may defer addressing these arguments until it takes up the merits of any motion for class certification filed by plaintiffs in the future.

**Conclusion**

Because the events that plaintiffs claim have injured them constitute a "prohibited personnel practice" under 5 U.S.C. § 2302(b)(6), they must complain initially to the Office of Special Counsel. 5 U.S.C. § 1214(a)(1)(A). Because nothing in their First Amended Complaint or opposition to defendant's motion to dismiss even remotely suggests that plaintiffs have presented their claims to the OSC, and the CSRA is the exclusive remedial scheme for their claims, this Court lacks jurisdiction and this case should be dismissed. Fed. R. Civ. P. 12(h)(3).

Dated: April 7, 2008.

Respectfully submitted,

_____________________________________
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

/s/____________________________________
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/___________________________________
JANE M. LYONS, D.C. Bar # 451737
Assistant United States Attorney
555 4th Street, N.W. - Room E4822
Washington, D.C. 20530
(202) 514-7161