UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CAMILLE GROSDIDIER, et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 07-1551 (ESH) |
| JAMES K. GLASSMAN, Chairman, Broadcasting Board of Governors, | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs have brought suit alleging that the Broadcasting Board of Governors ("BBG") unlawfully hired foreigners to fill positions for which plaintiffs, who are United States citizens, had applied and were suitably qualified, in violation of 22 U.S.C. § 1471(1) and agency regulations. In addition to themselves, plaintiffs seek to represent a class of similarly-situated U.S. citizens who applied for a promotion within the BBG, were deemed qualified, but were denied the position in favor of a non-citizen. Defendant has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. For the reasons set forth herein, the Court will grant the motion.

### BACKGROUND

**I.    Factual History**

Plaintiffs Camille Grosdidier, Jorge Bustamante, and Carlos Martinez are U.S. citizens employed in the French to Africa Division of the Voice of America ("VOA"), the VOA Television Division, and the Office of Cuba Broadcasting, respectively. (First Am. Compl. ¶¶ 3-5.) Defendant BBG is an independent federal agency that administers and funds the Voice of

America and the Office of Cuba Broadcasting, as well as other international broadcasters.[1]  (*Id.* ¶ 7.)

On May 22, 2002, Grosdidier applied for a non-supervisory GS-13 International Broadcaster position in her division at the VOA.  (*Id.* ¶ 17.)  Although she was deemed qualified and was interviewed for the position, a Haitian citizen was ultimately selected.  (*Id.*)  On February 13, 2006, Grosdidier applied for a Supervisory GS-13 International Broadcaster position in her division.  (*Id.* ¶ 18.)  Again, she was deemed qualified and was interviewed for the position, but a citizen of Chad was selected.  (*Id.*)  Similarly, in April 2006, Bustamante and Martinez both applied for the same position as a Supervisory International Broadcaster in the VOA Latin American Division.  (*Id.* ¶¶ 21, 24.)  Although they were both deemed qualified and were interviewed for the position, a non-citizen was selected.  (*Id.*)

## II.     Procedural History

On September 7, 2006, Grosdidier filed suit against the United States in the Court of Federal Claims, alleging that the BBG, by denying her promotions in favor of non-U.S. citizens, had violated 22 U.S.C. § 1474(1), which provides for the hiring of non-citizens when "suitably qualified" U.S. citizens are unavailable.  *See Grosdidier v. United States*, 77 Fed. Cl. 106 (Fed. Cl. 2007).  Grosdidier brought suit pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1), for the recovery of money damages under the Back Pay Act, 5 U.S.C. § 5596.  As in the instant suit, Grosdidier sought to represent a class of similarly-situated U.S. citizens who, although they had been deemed qualified, were denied promotions by the BBG in favor of non-citizens.  77 Fed.

---

[1] In addition to the VOA and the Office of Cuba Broadcasting, these broadcasters include Radio Free Asia, Radio Sawa, Alhurra, and Radio Free Europe/Radio Liberty.  (*Id.*)

Cl. at 107 n.2. The court dismissed Grosdidier's action for lack of subject matter jurisdiction, concluding that § 1474(1) did not mandate the payment of money damages.[2] *Id.* at 110.

Seeking to salvage their challenge to defendant's promotion decisions, plaintiffs filed the instant action on August 31, 2007, alleging that defendant, by selecting non-U.S. citizens for the VOA positions for which plaintiffs had applied, violated § 1474(1) and defendant's regulations, which permit the hiring of non-citizens only when "equally or better qualified" U.S. citizens are unavailable.[3] Recasting the prior Grosdidier complaint as one for equitable relief and back pay

---

[2] In light of this disposition, the court did not reach the issues of whether class certification was warranted and whether, as defendant argued there and reiterates here, the court lacked jurisdiction based on the Civil Service Reform Act of 1978.

[3] 22 U.S.C. § 1474(1) provides in pertinent part:

> [T]he Secretary, or any Government agency authorized to administer such provisions may (1) employ, without regard to the civil service and classification laws, aliens within the United States and abroad for service in the United States relating to the translator or narration of colloquial speech in foreign languages or the preparation and production of foreign language programs *when suitably qualified United States citizens are not available when job vacancies occur* . . . .

(emphasis added). BBG rules implementing § 1474(1) provide that

> [a] non-U.S. citizen may be appointed only after *reasonable efforts to recruit equally or better qualified U.S. citizens have been made and have been unsuccessful*. A non-U.S. citizen may be employed or promoted *only if no equally or better qualified U.S. citizen is available to perform the duties of the position*. . . . As a matter of Broadcasting policy, non-U.S. citizens will not be employed in or promoted to supervisory positions . . . . (1) Exceptions will be allowed only on an individual basis when the appropriate Office, or Service Head determines, with the concurrence of the Director of Personnel that the *unavailability of an equally or better qualified U.S. citizen* to perform such supervisory . . . functions is not only significantly handicapping the ability of the Office, or Service to operate, but also is having an adverse impact on Broadcasting's mission.

BBG Manual of Operations & Administration, Part V-A, §§ 822.1(a), (c) (AR at 13 (emphasis added)).

under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, plaintiffs seek a declaration on behalf of themselves and a class of similarly-situated BBG employees that each selection by defendant of a non-U.S. citizen over a suitably qualified U.S. citizen was unlawful and ask that the Court set aside these decisions; grant the promotions to the plaintiffs and class members; and order the payment of benefits, including back pay, and fees and costs.

Defendant has moved to dismiss the complaint, arguing that this Court lacks subject matter jurisdiction because the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 *et seq.* (codified as amended in scattered sections of 5 U.S.C.), is the exclusive remedy for plaintiffs' claims.

## ANALYSIS

**I.     Standard of Review**

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A court must accept as true all factual allegations in the complaint. *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). A court may dismiss a complaint for lack of subject matter jurisdiction only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Richardson v. United States*, 193 F.3d 545, 549 (D.C. Cir. 1999) (quoting *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1086 (D.C. Cir. 1998)). In considering the sufficiency of a plaintiff's allegations for this purpose, a court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

**II.     Discussion**

The CSRA comprehensively overhauled the federal civil service system, establishing an elaborate new framework for evaluating personnel actions taken against federal employees. The Supreme Court has described this framework as "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *United States v. Fausto*, 484 U.S. 439, 445 (1988). The CSRA provides procedural protections for three types of personnel actions: (1) "adverse actions," such as removal, suspension, or reduction in grade or pay, taken in response to employee misconduct in order to promote the "efficiency of the service," 5 U.S.C. §§ 7503, 7513; (2) personnel actions, such as removal or reduction in grade, taken in response to unacceptable job performance, 5 U.S.C. § 4303; and (3) certain "prohibited personnel practices" involving personnel actions such as appointment, promotion, disciplinary action, and decisions concerning pay, benefits or awards, 5 U.S.C. § 2302.

For specified "adverse actions," the statute provides for direct judicial review after extensive prior administrative proceedings; for specified "prohibited personnel practices," so defined because they are "infected by particularly heinous motivations or disregard of law," the statute provides for review by the Office of Special Counsel ("OSC") "with judicial scrutiny limited, at most, to insuring compliance with the statutory requirement that the OSC perform an adequate inquiry;" and for other minor personnel actions, the statute provides for review by neither the OSC nor the courts. *Carducci v. Regan*, 714 F.2d 171, 175 (D.C. Cir. 1983) (internal quotations omitted). These protections constitute an "exhaustive remedial scheme" for reviewing personnel actions taken against federal employees. *Id.* at 174. Accordingly, the CSRA precludes APA-based personnel claims that come within its purview. "[An] employee . . .

cannot circumvent the statute's comprehensive and carefully balanced remedial scheme by using the APA to proceed directly to court." *Graham v. Dep't of Justice*, No. 02-1231, 2002 U.S. Dist. LEXIS 27419, at *6 (D.D.C. Nov. 20, 2002) (citing, *inter alia*, *Harrison v. Bowen*, 815 F.2d 1505, 1514-16 (D.C. Cir. 1987)), *aff'd sub nom. Graham v. Ashcroft*, No. 03-5025, 2003 U.S. App. LEXIS 16108 (D.C. Cir. Aug. 5, 2003); *see also Nat'l Treasury Employees Union v. Egger*, 783 F.2d 1114 (D.C. Cir. 1986) (employees claiming that job reclassification resulted from a "prohibited personnel practice" had to rely on OSC); *Gray v. Office of Pers. Mgmt.*, 771 F.2d 1504 (D.C. Cir. 1985) (ALJs alleging "prohibited personnel practice" could not seek direct judicial review of a failure to promote, but had to present claims to OSC).

The Court must therefore determine whether plaintiffs' claims fall within the CSRA's exclusive remedial scheme. Decisions regarding federal employee promotions fall squarely within the CSRA's definition of "personnel action." *See* 5 U.S.C. § 2302(a)(2)(A)(ii). However, the CSRA protects employees from unfair personnel actions regarding promotions only if such actions spring from an improper basis or motive as specified by 5 U.S.C. § 2302(b) (and thus are considered "prohibited personnel practices"). *Carducci*, 714 F.2d at 175 n.3. Such improper bases include taking or failing to take a personnel action "if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301," 5 U.S.C. § 2302(b)(12), which principles in turn include protection against arbitrary action and personal favoritism, § 2301(b)(8)(A), and receipt of "fair and equitable treatment in all aspects of personnel management," § 2301(b)(2).

In this case, plaintiffs allege that defendant acted arbitrarily and capriciously in violation of statute and its regulations by selecting non-citizens over plaintiffs for jobs for which plaintiffs

were at least as, if not more, qualified.[4]  This claim clearly implicates the merit principles contained in §§ 2301(b)(8)(A) and (b)(2), and therefore involves an alleged prohibited personnel practice.[5]  *Cf. Carducci*, 714 F.2d at 175 (noting that §§ 2301(b)(8)(A) and (b)(2) would give OSC jurisdiction over that portion of appellant's complaint that alleged violation of a rule requiring that fact-finding in an agency grievance be carried out by someone who had not been involved in the matter being grieved); *Croddy v. FBI*, No. 00-651, 2006 U.S. Dist. LEXIS 71823, at *18 (D.D.C. Sept. 29, 2006) (plaintiffs' claim that defendants' reliance on polygraph test results was arbitrary or that the polygraph process was unfair directly implicated the merit system principle requiring fair and equitable treatment of employees and applicants).

Accordingly, as plaintiffs' APA claims come within the purview of the CSRA, they are precluded.  As the D.C. Circuit has recognized, the "exhaustive remedial scheme of the CSRA would be impermissibly frustrated" by permitting direct judicial review of less significant personnel practices when major adverse actions must first be litigated within the agency.  *Carducci*, 714 F.2d at 174.

---

[4] Plaintiffs do not challenge the facial validity of defendant's regulations implementing 22 U.S.C. § 1474, which require that a U.S. citizen be at least as qualified as his or her foreign competitors in order to be given a promotion preference; rather, they only challenge defendant's application of those rules.  Therefore, plaintiffs cannot argue that defendant was obliged to hire them even if they were less qualified than the non-citizen candidates.

[5] Moreover, as defendant contends, plaintiffs' claims also fall within the scope of § 2302(b)(6), which prohibits the "grant [of] any preference or advantage not authorized by law, rule, or regulation to any employee or applicant . . . for the purpose of improving or injuring the prospects of any particular person for employment."  Plaintiffs allege that they were equally or better qualified than the non-citizens who were selected by defendant; therefore, by extension, they are contending that defendant granted an improper preference to non-citizens.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss [# 13] will be granted, and the above-captioned case is dismissed without prejudice.  All other motions are denied as moot.

```
                              /s/
                    ELLEN SEGAL HUVELLE
                    United States District Judge
```

Date: April 22, 2008